IN THE UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| BILLY GENE LEPLEY ) | Case No. 07-20344 |
| ) | Chapter 13 |
| Debtor. ) | |
| ) | |

## MEMORANDUM OPINION

The matter before the Court is the objection of Billy Gene Lepley ("Debtor") to the proof of claim filed by Beverly Lepley ("Claimant"). Claimant classified her claim (the "Claim") as an unsecured priority claim based on alimony, maintenance or support under §507(a)(7).[1] The grounds for the Debtor's objection is that the Claim is not a domestic support obligation, and therefore, should be classified as an unsecured claim. The Claimant also objected to the Debtor's chapter 13 plan because it fails to provide for the full payment of her domestic support obligation. This is a core proceeding under 28 U.S.C. §157(b)(2)(B) and (L) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that the debt underlying Claimant's proof of claim, other than the amount of $198.74, is not in the nature of a domestic support obligation and thus, that portion of the Claim should be allowed as an unsecured claim rather than an unsecured priority claim. Based on that finding, the Claimant's objection to the Debtor's chapter 13 plan is sustained in part, and overruled in part.

---

[1] As discussed in this opinion, Section 507 was amended by the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The proof of claim form has not been revised to reflect the changes.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

The Debtor and the Claimant were married on February 14, 1981, and had a daughter, Kristen, in 1983. The couple separated in January of 2002. On March 11, 2002, the Debtor and the Claimant entered into a Separation and Property Settlement Agreement (the "Agreement") which set forth their respective rights with regard to property and financial obligations. The Agreement was incorporated in the Judgment and Decree of Dissolution of Marriage (the "Dissolution Decree") entered by the Circuit Court of Callaway County, Missouri, on June 10, 2002.[3]

The Agreement provided, among other things, that Kristen's educational costs were to be paid equally by the Debtor and the Claimant until she obtained a baccalaureate degree or reached the age of 22, whichever occurred first. Paragraph 5 of the Agreement provided that "Husband shall pay to Wife the sum of $150 per week to be used to pay support for Kristen, including automobile expense and living expenses incurred by Petitioner as the custodial parent."

Exhibit "A" to the Agreement listed the marital property to be awarded to the Claimant. Among the items was the marital residence, "subject to indebtedness to Cendant, which Wife shall pay." The list also included the following provision:

> 15. Husband shall pay to Wife the sum of $150.00 per week commencing upon the termination of the support for Kristen Ashley Lepley as described in paragraph 5 of this Agreement, and continuing until the balance of the current mortgage debt to Cendant is paid in full. This payment is a property division payment.

The Debtor made voluntary payments to the Claimant pursuant to the Dissolution Decree and Agreement through February of 2004. Between February 6, 2004 and February 13, 2005, the date Kristen Lepley reached age 22, a total of $7,950 accrued as child support under the Agreement. The

---

[2] The parties have stipulated to the facts and submitted the operative documents in the Stipulation By and Between Beverly Lepley and Billy Gene Lepley (the "Stipulation") presented to the Court at a hearing held on August 16, 2007.

[3] *See* Exhibit "C" to the Stipulation.

Claimant subsequently brought garnishment actions against the Debtor and recovered a total $7,751.26, leaving a balance of $198.74 for child support. The Debtor has made no voluntary payments to the Claimant since February 13, 2005.

Debtor filed his Chapter 13 voluntary petition on March 8, 2007, and his Chapter 13 Plan shortly thereafter. The Plan was amended on April 12, 2007 (the "Amended Plan"). The Amended Plan states that there is no domestic support obligation.

Claimant filed a Proof of Claim on May 15, 2007, in the amount of $9,579.14. The Claim is classified as an unsecured priority claim based on alimony, maintenance, or support owed to a former spouse, and is premised on the obligation described previously – Number 15 in Exhibit "A" to the Agreement (the "Debt"). The Debtor objected to the classification of the Claim on the grounds that the Debt was not a domestic support obligation and, therefore, the Claim should be classified as an unsecured claim without priority. The Claimant responded, arguing that the Debt 1) accrued before the order for relief by reason of a court order, 2) is in the nature of alimony, maintenance, or support of Claimant as Debtor's former spouse, without regard to whether such debt is expressly so designated, and 3) has not been assigned to a non-governmental entity.

The Claimant also filed an objection to the Amended Plan. She contends that the Debtor erroneously identified her Claim as a non-priority, unsecured claim when, in fact, it is a domestic support obligation under §101(14A). It is Claimant's position that the Amended Plan is not confirmable because it does not provide for full payment of the domestic support obligation as required by §1325(a)(8).

## II. DISCUSSION

### A. Burden of Proof

Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that "[a] proof of claim

3

executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Thus, if a procedurally proper claim is filed, an objecting party carries the burden of going forward with evidence contesting the validity or amount of the claim. *Phyllis Michele Dove-Nation v. eCast Settlement Corp.*, 318 B.R. 147, 152 (8th Cir. B.A.P. 2004); *In re Holm*, 931 F. 2d 620, 623 (9th Cir. 1991). Once the objecting party succeeds in overcoming the prima facie effect given to the claim by Rule 3001(f), the burden shifts to the claimant to prove the validity of the claim by a preponderance of the evidence. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3rd Cir. 1992).

B. Applicable Law on Definition of Domestic Support Obligation

Bankruptcy Code §1322(a)(2) requires a chapter 13 plan to "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim." Section 507 was amended by the enactment of BAPCPA to move the former support-type debts from seventh priority to first priority. It now provides, in pertinent part --

(a) The following expenses and claims have priority in the following order:

(1) First:

(A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.

This priority provision adopts the term, "domestic support obligation," as defined in new section 101(14A):

The term "domestic support obligation" means a debt that accrues before, on, or

4

>after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is –
>
>>(A) owed to or recoverable by –
>>>(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>>>(ii) a governmental unit;
>>
>>(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>>
>>(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of –
>>>(i)  a separation agreement, divorce decree, or property settlement agreement;
>>>(ii) an order of a court of record; or
>>>(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>>
>>(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

In the instant case, there is no dispute that the requirements in paragraphs (A), ( C) and (D) are satisfied. The critical determination is whether the Debtor's obligation to Claimant is "in the nature of alimony, maintenance, or support" and, accordingly, a domestic support obligation entitled to priority.

The term "domestic support obligation" is found throughout the Bankruptcy Code, including §523(a)(5) as an exception to discharge. The definition of "domestic support obligation" in §101(14A) was derived in significant part from the definition of a non-dischargeable debt for alimony, maintenance and support contained in pre-BAPCPA §523(a)(5). *In re Knox*, 2007 WL 1541957 (Bankr. E.D. Tenn. May 23, 2007)(citing *In re Loehrs*, 2007 WL 188364, at *3 n.3 (Bankr. N.D. Okla. Jan. 22, 2007)). Case law construing what constituted non-dischargeable alimony, maintenance and support under that section is relevant in determining what constitutes a debt "in

5

the nature of alimony, maintenance, or support" under §101(14A). *Id.*

Whether a particular debt is a support obligation or part of a property settlement is a question of federal bankruptcy law, not state law. *See In re Williams*, 703 F.2d 1055, 1056 (8th Cir. 1983). Under bankruptcy law, it is generally stated that the intent of the parties at the time the agreement is executed and the function the payment serves will determine whether a debt under that agreement is in the nature of alimony, maintenance, or support. *Alticor, Inc. v. Grissum*, 198 S.W.3d 629, 633 (Mo. App. S.D. 2006). *See also In re Ellis*, 149 B.R. 925, 927 (Bankr. E.D. Mo. 1993)(courts must look to the function an award was intended to serve). The "intent and function" test is an examination of the totality of the circumstances at the time the award was made, considering three main factors: (1) the language and substance of the agreement, (2) the parties' relative financial circumstances at the time of dissolution, and (3) the degree to which the obligation enables the recipient to maintain daily necessities. *Alticor, Inc. v. Grissum*, 198 S.W. 3d at 633 -34. These three factors are nonexclusive, however – courts are free to consider all relevant evidence, direct or circumstantial, that sheds light on the subject. *Id.* at 634 (citing *In re Burton*, 242 B.R. 674, 679 (Bankr. W.D. Mo. 1999)); *In re Brody*, 3 F. 3d 35, 38[3] (2nd Cir. 1993)). Such factors include: the respective employment histories and prospects for financial support; the fact that one party or another receives the marital property; the periodic nature of the payments; and whether it would be difficult for the former spouse and children to subsist without the payments. *In re Tatge*, 212 B.R. 604, 608 (B.A.P. 8th Cir. 1997); *In re Schurman*, 130 B.R. 538, 539 (Bankr. W.D. Mo. 1991)(citing *In re Gianakas*, 917 F.2d 759, 762 (3rd Cir. 1990)). Traditional indicia of a support award include: (1) a label as such in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits. *In re Sorah*, 163 F.3d 397, 401 (6th Cir. 1998).

A divorce decree's characterization of an award as maintenance or alimony does not bind a bankruptcy court. *In re Williams,* 703 F.2d at 1057. It is, however, a starting point for the determination of the award's intended function. *See In re Kennard*, 259 B.R. 146, 150 (Bankr. W.D. Mo. 2001). *See also In re Sorah*, 163 F.3d at 401("A state court's award of alimony is entitled to deference when labeled and structured as such.")(citing *In re Fitzgerald*, 9 F.3d 517, 520 (6th Cir. 1993)); *In re Hamblen*, 233 B.R. 430, 435 (Bankr. W.D. Mo. 1999) (due deference should be given to the parties' or state court's characterization of the award) . The party challenging the "label" has the burden of proving that the court issuing the divorce decree intended something other than what the decree stated. *In re Kennard*, 259 B.R. at 150.

The structure of the document is often probative of intent. In the recent case of *In re Zeitchik,* 2007 WL 1806047 (Bankr. E.D.N.C. June 15, 2007), the court had to make a determination as to the nature of a debtor's obligation to his former wife in the context of a discharge proceeding. The debtor testified that he intended the payments to be made to satisfy his wife's interest in his business and in the marital residence. The former wife testified that she intended to receive the payments to maintain her current standard of living. Because the parties' intents differed, the court looked to other factors such as the credibility of the testimony and the tax treatment of the payments. The court also relied heavily on the language and structure of the agreement incorporated into the divorce decree. The agreement specified that the payments were "in partial satisfaction of ... marital property interests." There was no modification language. The obligations were treated separately from the alimony. The court considered this relevant:

> In *Tilley v. Jessee*, 789 F.2d 1074 (4th Cir. 1986), the Fourth Circuit Court of Appeals held the structure of the document, by placing alimony and property settlement in different provisions of the document, was probative of intent. The Court said, 'In this instance, the agreement did more than simply label payments as alimony or property settlement. It exhibited a structured drafting that purported to deal with separate issues in totally distinct segments of the document.' *Id.* at 1077-1078. That is the case here where each of the three obligations were dealt with in separate

7

paragraphs.

*In re Zeitchik,* 2007 WL 1806047 at [3]. The *Zeitchik* court concluded that the payments in issue were settlements of marital property interests and not in the nature of alimony, support, or maintenance.

### C. Analysis of Intent and Function of Payment Obligation

To determine the intent and function of the award at issue here, this Court will consider the factors enumerated above. To begin with, the language and structure of the Agreement are consistent. Paragraph 6 of the Agreement reads: "The parties have acquired marital property and have reached an agreement regarding the division of the marital property." Subparagraph 6.A. then refers to a separate Exhibit "A" for a listing of marital property to be awarded to the Claimant. The Debt is described in number 15 on that list; the language specifically states that "[t]his payment is a property division payment."[4] The only mention of "support" is in the Agreement itself (paragraph 5) and relates to the daughter's expenses: "...Husband shall pay to Wife the sum of $150.00 per week to be used to pay support for Kristen, including automobile expense and living expenses incurred by Petitioner as the custodial parent." That support payment is terminated at a prescribed time, the earlier of the date Kristen reaches age 22 or obtains a degree. It follows that the Agreement is structured on the premise that, as the daughter became more independent, the Claimant's disposable income would increase and the child support from the Debtor would become unnecessary. The funds from the Debtor previously used for Kristen's support could be used to reduce the Cendant debt instead. This factor suggests a property division payment, not support.

---

[4] The Claimant asserts that if the Debt would have been characterized as maintenance by the divorce court, she would have been obligated to pay income tax on the money received from the Debtor. The Court does not find this argument to be persuasive under the circumstances. The Claimant has presented no evidence that the tax treatment would have hindered her ability to cover her daily expenses, or that the parties even discussed the tax implications when negotiating the Agreement.

8

With respect to the parties' respective financial circumstances, the Agreement is clear. Paragraph 10 states: "Neither party requests maintenance as each is able to provide for their own support." At the time of the dissolution, both Debtor and Claimant were employed. Each party assumed a portion of the joint debt; each party contributed to the child-rearing expenses. There is no evidence that the parties' financial situations were vastly different at the time of the divorce, or that the Debt was an "equalization payment" to balance their disparate incomes. This factor suggests a property division payment.

The last main factor for the Court's consideration is the extent to which the Debtor's obligation enabled the Claimant to maintain her daily necessities. There is no evidence that the Debt was created to provide for the Claimant's everyday needs. Neither the Dissolution Decree nor the Agreement expresses that purpose. To the contrary, the Agreement provides in no uncertain terms that the Claimant is able to support herself. There is no testimony from the Claimant that she relied on the Debt for her maintenance; she was employed at the time she entered into the Agreement. Further, there is no evidence of extraordinary expenses incurred by the Claimant on a daily basis, such as those associated with coping with an illness or caring for an elderly relative. This factor also suggests a property division payment.

The Claimant brought only one case to the Court's attention to support her position: *In re Knox*, 2007 WL 1541957 (Bankr. E.D. Tenn. May 23, 2007). In that case, however, the court ruled in favor of the debtor. At issue in *Knox* were two debts that the debtor was obligated to pay to his former wife pursuant to a marital dissolution agreement. The debtor filed for bankruptcy, and treated the debts as unsecured nonpriority claims in his chapter 13 plan. His former wife argued that the plan could not be confirmed because it did not provide for the full payment of the debts. As in this case, the resolution turned on whether the obligations were in the nature of alimony, maintenance, or support. Applying the analysis used in the Sixth Circuit, the court concluded that the debts were not.

9

The court relied heavily on the fact that the marital dissolution agreement indicated that the allocation of debts was intended as "part of a fair and equitable division of the parties' assets and liabilities," rather than as part of an award of support. *Id.* at *3. Additionally, the former wife testified that alimony was never discussed in the negotiation of the agreement. Since the debts did not constitute domestic support obligations, they did not have to be paid in full under the plan; the chapter 13 plan was confirmed.

### III. CONCLUSION AND ORDER

After examining the evidence before it, the Court determines that the Debtor's obligation to Claimant was not in the nature of a domestic support obligation. The documents governing the parties' dissolution indicate that the Debt was intended to be a property division payment. Nothing in the record indicates that in ordering the Debtor to pay this Debt, the Circuit Court was concerned with balancing the income and earning capacities of the parties. The Claimant offered no testimony to support her contention that the Debt was necessary to cover her daily living expenses. When the Debtor objected to the Claim and presented the language of the Dissolution Decree and the Agreement as evidence, he overcame the prima facie effect of the Claim's validity as classified. The burden then shifted to the Claimant to prove by a preponderance of the evidence that the Debt, other than the amount of $198.74 to which the parties stipulated was child support, was in the nature of alimony, maintenance or support. She has failed to meet that burden. For these reasons, the Court finds that only $198.74 of the Claim is a domestic support obligation entitled to priority; the balance is not a domestic support obligation and thus, should be classified as an unsecured claim. Accordingly, the Debtor's objection to the Claim is sustained in part and overruled in part. Likewise, the Claimant's objection to the Amended Plan is sustained in part and overruled in part. To be confirmed, the Amended Plan must identify the $198.74 of unpaid child support as a domestic support obligation and provide for payment as required by §1325(a)(8). A separate Order will be

entered in accordance with Bankruptcy Rule 9021.

Dated: September 6, 2007 /s/ Dennis R. Dow
THE HONORABLE DENNIS R. DOW
UNITED STATES BANKRUPTCY JUDGE

Copies to:
J. Brian Baehr
Thomas Dunlap
Richard Fink